VINCENT PAGE *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF HICKORY HILLS, Defendant-Appellant—(THE VILLAGE OF JUSTICE, Defendant-Appellee.)

(No. 56614;

First District (1st Division)—March 26, 1973.

*Rehearing denied April 24, 1973.*

Kozlowski & Smith, of Chicago, (Louis V. Kiefor, special counsel, and John J. Kozlowski, of counsel,) for appellant.

Levin & Berger, of Chicago, for appellees Vincent Page, Ed Bauman, and Dave Jackson.

Walter C. Wellman, of Lyons, for appellee Village of Justice.

Mr. JUSTICE EGAN delivered the opinion of the court:

The plaintiffs filed a suit for declaratory judgment alleging that they were purchasers of a tract of land under a real estate contract dated November 7, 1969. Both the City of Hickory Hills and the Village of Justice claimed that the property was located in their respective municipalities. Because the plaintiffs wished to build on the property and because they were unable to make proper application for zoning and building permits, they asked the court to declare which municipality had annexed the property. Justice filed a motion for summary judgment which was allowed, and the court declared the subject property to be within the corporate limits of Justice.

The subject property consists of 20 acres bounded by the south side of west 86th Street on the north, the north side of west 87th Street on the south, the west side of south 88th Avenue on the east and the east side of south 90th Avenue on the west. On February 15, 1965, the Village (now City) of Hickory Hills passed an ordinance annexing 40 acres of land consisting of the subject property and 20 acres immediately to the north, which was bounded by 85th Street on the north, 86th Street on the south and the same east-west boundaries as the subject property. On the same day the Village of Justice passed an ordinance annexing the north 20 acres of the 40-acre tract annexed by Hickory Hills. The Justice ordinance did not include the subject property and was recorded 25 minutes after the Hickory Hills ordinance.

Later, in 1965, Justice filed *quo warranto* proceedings against Hickory Hills contesting only the 20 acres north of the subject property. On January 11, 1967, Judge Charles S. Dougherty entered an order in the *quo warranto* proceedings which recited, in part, "that the attorneys for the Village of Hickory Hills having represented that said village did on December 29, 1966, disconnect all the territory which is the subject matter of the instant suit, and both parties hereto through their attorneys agree that the suit can be dismissed, it is * * * ordered * * * dismissed * * *." The order was approved by the attorneys for each village. They are not the same attorneys that have appeared in this cause in the trial court or in this court.

On December 29, 1966, the Village of Hickory Hills had passed an ordinance purportedly disconnecting the 20 acres which were the subject of the *quo warranto* proceedings and the 20 acres which are the subject

of these proceedings. Immediately after passing that ordinance of disconnection, Hickory Hills passed an ordinance reannexing the 20 acres which are the subject matter of these proceedings. These ordinances were recorded on December 30, 1966, and re-recorded on June 28, 1969. Meanwhile, on June 3, 1968, Justice passed an ordinance annexing the subject property and recorded it on June 28, 1969, *one minute* after the rerecordation of the Hickory Hills ordinance.

Hickory Hills maintains the ordinance of disconnection of December 29, 1966, was invalid, and, consequently, the original annexation ordinance of 1965 is in full force and effect; alternatively, if the ordinance of disconnection was valid, the reannexation of the subject property the same night was valid and constitutes the basis of its claim over the subject property.

Justice maintains, with considerable asperity, that the disconnection by Hickory Hills was a valid one made pursuant to an agreement, but that the reannexation of the subject property on December 29, 1966, was invalid because it did not comply with Chapter 24, Section 7—1—8 in that all of the owners of record did not sign the petition for annexation. Hickory Hills counters that the annexation ordinance passed by Justice on June 3, 1968, was invalid because Section 7—1—25 is inapplicable and for other reasons not immediately pertinent.

On the motion for summary judgment, Justice submitted the affidavit of Dolores Pleto (described as Pluto in the affidavit of the Village President of Justice, Edward E. Rusch, who, to add to the confusion, is identified as Rausch in the brief of Hickory Hills). In that affidavit Dolores Pleto stated that she was an elector residing on certain described property. The legal description contained in her affidavit is not of the subject property. She swore that she never executed a petition for annexation allegedly filed with the Village Clerk of Hickory Hills. The counter-affidavit of Joseph Kozlowski, the City Attorney of Hickory Hills, filed in opposition to the motion, alleges, however, that Dolores Pleto, along with two men, both named John Pleto, and Donald Pleto were indeed the record owners of the subject property, that they considered themselves residents and electors of the City of Hickory Hills since the enactment of the 1965 annexation ordinance, that they had voted in Hickory Hills elections including one in April, 1971, that they had requested and had received sewer and water service from Hickory Hills and that they had executed sales tax returns to the State of Illinois in which they listed Hickory Hills as the municipality in which they lived and did business under the name, Royal Oaks Grove.

The affidavit further alleged that Michael Pleto (not previously men-

tioned), Dolores Pleto and John Pleto, the record owners of the property, appeared before the Zoning Commission of Hickory Hills seeking a classification from commercial to multiple dwelling, that when the Zoning Commission recommended to Hickory Hills that the property be reclassified to single family residential the record owners then apparently took the position they were not in the Village of Hickory Hills and that the plaintiffs entered into a real estate sales contract with the record owners conditioned upon the property being re-zoned to 8 acres of commercial and 12 acres of multiple dwelling condominium.

Hickory Hills also filed the counter-affidavit of Vincent R. Ewald, now deceased, who was the Village Attorney of Hickory Hills at the time the annexation ordinance of December 29, 1966, was passed. He swore that before drafting the ordinance he determined that "Donald Pluto, Michael Pleto, John Pluto and Dolores Pluto" were the electors residing on the land at the time, that each of them signed a petition before him for the annexation of their property to Hickory Hills and that the petition was drafted by him and submitted to the Village Clerk before the adoption of the annexation ordinance.

Hickory Hills also filed the affidavit of Betty Maher, City Clerk of Hickory Hills, in which she swore that she had been unable to locate the petition executed by the electors and owners referred to in the annexation ordinance of December 29, 1966.

At the close of oral argument, the trial court concluded that the absence of the petition allegedly signed by Dolores Pleto was fatal to the position of Hickory Hills and that no factfinder could reasonably conclude that Dolores Pleto had in fact signed the petition. That being so, it necessarily followed that the reannexation ordinance was invalid in that, as Justice contended, it did not comply with Chapter 24, Section 7—1—8.

Insofar as the record discloses, the ordinance passed by Hickory Hills on February 15, 1965, annexing the subject property and the 20 acres immediately to the north was a valid one. Therefore, the ordinance of Justice passed the same day purportedly annexing the north 20 acres recorded twenty-five minutes after the recordation of the Hickory Hills ordinance was of no force and effect.

■■ When Justice filed the *quo warranto* proceedings, the only issue before the court involved the north 20 acres, and not the subject property. The order by Judge Dougherty shows that the attorneys for Hickory Hills represented that they had disconnected "all the territory which [was] the subject matter" of the *quo warranto* suit. There was no misrepresentation to the court; Hickory Hills had, in fact, passed a dis-

connection ordinance involving the north 20 acres. The answer of Justice alleges that the annexation ordinance of June 3, 1968, was passed pursuant to the representations of Mr. Ewald, made in the *quo warranto* suit, that the subject property had been disconnected from the Village of Hickory Hills. Whether Mr. Ewald had agreed to disconnect the subject property, as well as the 20 acres to the north, is immaterial. Any agreement entered into by the attorney could not bind the municipality, particularly where legislative action is required. *Wacker-Wabash Corp. v. City of Chicago*, 350 Ill. App. 343, 112 N.E.2d 903; *O'Neill v. City of Chicago*, 169 Ill. App. 546.

■■ The 1968 annexation ordinance of Justice recites that the annexation was made pursuant to Section 7—1—25 of the municipal code. The Hickory Hills disconnection ordinance of December 29, 1966, does not allege the applicable statute under which it was passed, but instead states: "Whereas, the Village of Justice has filed quo warranto proceedings * * * and [w]hereas, it is deemed to be in the best interest of the Village of Hickory Hills * * * to avoid lengthy and costly litigations, that the territory so annexed be disconnected from the Village of Hickory Hills * * *." We deem that the disconnection ordinance of Hickory Hills presents the threshold issue in this case. Unfortunately, this issue was never presented in the trial court as clearly and concisely as it could have been. However, after examining the answer of Hickory Hills, the affidavit of Joseph Kozlowski and the oblique references to disconnection made in the trial court, we cannot say that Hickory Hills has waived its contention that the disconnection ordinance of December 29, 1966, was invalid.

■■ The record before us is a confusing one. The mistake in names and legal description, the two races to the Recorder's Office, the re-recording of the ordinance, the disconnection and immediate re-annexation, the missing petition, the conflict between the testimony of Ewald and Dolores Pleto, and, most of all, the suggestion of an agreement to disconnect the subject property present a perplexing picture. Since many of the facts are not pertinent to our decision, we would prefer to refrain from comment upon the course of conduct shown by this record. However, one observation must be made. The citizens of this State are not residents of fiefs which may be bartered for, exchanged or divided after disputes, judicial or otherwise, at the whim of the municipalities. They have the right to rely on stability, and to insist on continuity, in government at whatever level, as they see fit. The exclusive methods of annexation and disconnection of territory have been determined by the State Legislature. A reading of those pertinent sections of the statute leads

to but one conclusion, that the persons primarily responsible for the decision to annex or disconnect are the citizens themselves.

The procedures for disconnection are contained in the Illinois Municipal Code. (Ill. Rev. Stat. 1969, ch. 24, secs. 7—1—24 to 27). Section 7—1—24 requires a petition signed by one-half of the electors and one-half of the owners of record; Section 7—1—26 provides for disconnection of territory lying along a boundary line between two municipalities and contiguous to a third one; Section 7—1—27 applies to territory not less than one-half square mile in area and requires a petition signed by not less than one hundered electors of the territory. With due deference to the concern of the corporate authorities for the best interest of the Village of Hickory Hills, we must note that the three sections referred to are either inapplicable factually or were not complied with by Hickory Hills.

The only remaining section, which is invoked by Justice, is 7—1—25, which provides:

> "Any unoccupied territory, lying along the boundary line between 2 adjoining municipalities, may be excluded from one of the adjoining municipalities and annexed to the other adjoining municipality, as follows:
>
> *    *    *"

■■■ The issue is whether the subject property is "unoccupied" within the meaning of the Act. The undisputed evidence is that Dolores Pleto and others were record owners, electors and residents of the subject property. Under this evidence, we must conclude that the property was occupied and that Section 7—1—25 is also inapplicable. Therefore, the disconnection ordinance of Hickory Hills passed December 29, 1966, is of no force and effect.

In view of the position we take of this issue, we need not pass on the correctness of the trial court's determination with respect to the validity of the reannexation ordinance. Since the disconnection ordinance was invalid, then perforce the reannexation was a useless act, and the annexation by Justice in June, 1968, was of no force and effect. We hold that the subject property is within the territorial limits of Hickory Hills under the annexation ordinance of Hickory Hills passed February 15, 1965. For these reasons the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

BURKE, P. J., and STAMOS, J., concur.